

AO 241 (Rev. 09/17)

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: Eastern | |
|---|---|---|
| Name (under which you were convicted): Chijioke Chukwuma Isamade | | Docket or Case No.: 2:25-CV-3755 (HC) |
| Place of Confinement: Sacramento County Main Jail | Prisoner No.: X5216991 | |
| Petitioner (include the name under which you were convicted) Chijioke Chukwuma Isamade, | Respondent (authorized person having custody of petitioner) Jim Cooper, Sheriff of Sacramento County | |
| The Attorney General of the State of: CALIFORNIA | | |

**PETITION**

FILED

DEC 3 0 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

1.   (a) Name and location of court that entered the judgment of conviction you are challenging: Superior Court of California, County of Sacramento - 651 "I" Street, Sacramento, CA 95814 - Department 60

  (b) Criminal docket or case number (if you know): 21FE019505

2.   (a) Date of the judgment of conviction (if you know): February 22, 2023

  (b) Date of sentencing: February 22, 2023

3.   Length of sentence: 4 years

4.   In this case, were you convicted on more than one count or of more than one crime? ☑ Yes   ☐ No

5.   Identify all crimes of which you were convicted and sentenced in this case:

PC 215 (A) - Carjacking
PC 245 (a)(4) - Assault by means of force likely to produce GBI

6.   (a) What was your plea? (Check one)

    ☐ (1) Not guilty    ☑ (3) Nolo contendere (no contest)

    ☐ (2) Guilty    ☐ (4) Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?    N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

❒ Jury    ❒ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

❒ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ❒ No

9.    If you did appeal, answer the following:

(a) Name of court: Court of Appeal - Third Appellate District

(b) Docket or case number (if you know):    C098869

(c) Result:    Judgement was Affirmed (Exhibit E)

(d) Date of result (if you know):    June 18, 2024

(e) Citation to the case (if you know): People V. Isamade, 2024 Cai·App·Unpub· LEXIS 3743

(f) Grounds raised: Failure to comply with Inter State Agreement on Detainers Act (IADA) codified as PC §1381·5 regarding speedy trial violations in case # 18FE018008. This case # 18FE018008 was part of a global plea for which petitioner was convicted alongside case # 21FE019505 hereby singularly contested. * Court appointed Attorney Stephanie Gunther.

(g) Did you seek further review by a higher state court?    ☑ Yes    ❒ No

If yes, answer the following:

(1) Name of court: Supreme Court of California

(2) Docket or case number (if you know):    S285726

(3) Result:    Petition for review was denied (Exhibit F)

AO 241 (Rev. 09/17)

(4) Date of result (if you know): August 21, 2024

(5) Citation to the case (if you know): People V. Isamade, 2024 Cal-LEXIS 4735

(6) Grounds raised: Review of Third Appellate denial for (IADA), PC § 1381.5 speedy trial violations.

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): N/A

(2) Result: N/A

(3) Date of result (if you know): N/A

(4) Citation to the case (if you know): N/A

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☑ Yes  ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: Court of Appeal - Third Appellate District

(2) Docket or case number (if you know): C104904

(3) Date of filing (if you know): October 6, 2025

(4) Nature of the proceeding: Petition for Writ of Error Coram Nobis

(5) Grounds raised: Lack of territorial Jurisdiction of Sacramento Superior Court, making the conviction void because the judgement rests upon a fundamentally fraudulent jurisdictional premise. Newly discovered evidence presented to expose extrinsic fraud.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☑ No

(7) Result: Petition was denied

AO 241 (Rev. 09/17)

(8) Date of result (if you know): October 31, 2025

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Supreme Court of California

(2) Docket or case number (if you know): S285726

(3) Date of filing (if you know): November 10, 2025

(4) Nature of the proceeding: Petition for review

(5) Grounds raised: Assumption of non-existent facts, absence of which entirely defeats fundamental territorial jurisdiction.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☑ No

(7) Result: Petition for review was denied

(8) Date of result (if you know): December 17, 2025

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☐ No

(7) Result: N/A

(8) Date of result (if you know): N/A

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☑ Yes ☐ No

(2) Second petition: ☑ Yes ☐ No

(3) Third petition: ☐ Yes ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: N/A

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** "See Attached Memorandum of Points and Authorities"

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

"See Attached Memorandum of Points and Authorities"

(b) If you did not exhaust your state remedies on Ground One, explain why: N/A

AO 241 (Rev. 09/17)

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: "See Attached Memorandum regarding AEDPA exceptions"; Newly discovered evidence after direct Appeal

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Petition for Writ of Error Coram Nobis

Name and location of the court where the motion or petition was filed:    Third Appellate District

Docket or case number (if you know):    C104904

Date of the court's decision:    October 31, 2025

Result (attach a copy of the court's opinion or order, if available):    Petition for writ of error coram nobis is denied – "Attached as Exhibit G"

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    Supreme Court of California

Docket or case number (if you know):    S293896

Date of the court's decision:    December 17, 2025

Result (attach a copy of the court's opinion or order, if available):    Petition for Review is denied "Attached as Exhibit H"

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: Petition for Writ of Error Coram Nobis.

**GROUND TWO:** "See Attached Memorandum of Points and Authorities"

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): "See Attached Memorandum of points and Authorities"

(b) If you did not exhaust your state remedies on Ground Two, explain why: N/A

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: "See Attached Memorandum regarding AEDPA exceptions"; Newly discovered evidence after direct Appeal.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Petition for Writ of Error Coram Nobis

Name and location of the court where the motion or petition was filed: Third Appellate District

Docket or case number (if you know): C104904

AO 241 (Rev. 09/17)

Date of the court's decision:    October 31, 2025

Result (attach a copy of the court's opinion or order, if available):    Petition for Writ of error coram Nobis is denied – "Attached as Exhibit G"

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    Supreme Court of California

Docket or case number (if you know):    S293896

Date of the court's decision:    December 17, 2025

Result (attach a copy of the court's opinion or order, if available):    Petition for Review is denied "Attached as Exhibit H".

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two :    Petition for Writ of Error Coram Nobis.

**GROUND THREE:** "See Attached Memorandum of Points and Authorities"

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

"See Attached Memorandum of points and Authorities"

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:  N/A

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☐ Yes  ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: "See Attached Memorandum regarding AEDPA exceptions"; Newly discovered evidence after direct Appeal.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes  ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Petition for Writ of Error Coram Nobis

Name and location of the court where the motion or petition was filed: Third Appellate District.

Docket or case number (if you know): C104904

Date of the court's decision: October 31, 2025

Result (attach a copy of the court's opinion or order, if available): Petition for writ of error coram nobis is denied- "Attached as Exhibit G"

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☑ No

(4) Did you appeal from the denial of your motion or petition?  ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Supreme Court of California

Docket or case number (if you know): S293896

Date of the court's decision: December 17, 2025

Result (attach a copy of the court's opinion or order, if available): Petition for Review is denied "Attached as Exhibit H"

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: Petition for Writ of error coram nobis.

**GROUND FOUR:** "See Attached Memorandum of Points and Authorities"

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

"See Attached Memorandum of Points and Authorities"

(b) If you did not exhaust your state remedies on Ground Four, explain why:     N/A

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes     ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: "See Attached memorandum regarding AEDPA exceptions"; Newly discovered evidence after direct appeal.

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Petition for Writ of Error Coram Nobis

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: Third Appellate District

Docket or case number (if you know): C104904

Date of the court's decision: October 31, 2025

Result (attach a copy of the court's opinion or order, if available): Petition for writ of error coram nobis is denied - "Attached as Exhibit G"

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☑ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Supreme Court of California

Docket or case number (if you know): S293896

Date of the court's decision: December 17, 2025

Result (attach a copy of the court's opinion or order, if available): Petition for Review is denied "Attached as Exhibit H"

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: Petition for Writ of Error coram nobis.

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?  ☑ Yes      ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:              N/A

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

N/A

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?      ☑ Yes      ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.  Federal district court for the Eastern District of California [2:25-cu-1216-JDP] This petition was focused on other cases which were a part of the global plea with 3 cases. Also, the grounds hereby contested are being brought for the first time and do not include the grounds in [case NO: 2:25-cv-1216-JDP] Petition for Habeas is currently pending on other grounds

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?      ☑ Yes      ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    "See answer in No. 14 above" - [Same response applies]

AO 241 (Rev. 09/17)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:    No Preliminary Hearing Held.

(b) At arraignment and plea:    Public Defender Brennan Mc Gee / replaced by Panel Attorney Richard Ilhareguy / Retained Att. Chet Templeton.

(c) At trial:

(d) At sentencing:    Retained Attorney Chet Templeton - 901 "H" street, suite 208, Sacramento, CA, 95814

(e) On appeal:    Stephanie L. Gunther - P. O. Box 892439 Temecula, CA, 92589

(f) In any post-conviction proceeding:    In Propria Persona (self) Sacramento Main Jail - 651 "I" Street, Sacramento, CA 95814

(g) On appeal from any ruling against you in a post-conviction proceeding:    In Propria Persona (self) - Sacramento Main Jail - 651 "I" Street, Sacramento, CA, 95814

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?    ☐ Yes  ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/A

(b) Give the date the other sentence was imposed:    N/A

(c) Give the length of the other sentence:    N/A

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?    ☐ Yes  ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

"See Attached Memorandum regarding AEDPA exceptions"

Page 14 of 16

AO 241 (Rev. 09/17)

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

> (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>>
>> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: "*See Attached Memorandum regarding Prayer for Relief*".

or any other relief to which petitioner may be entitled.

_____
                    Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on  12 | 29 | 2025  (month, date, year).

Executed (signed) on   12 | 29 | 2025 (date).

_____
                    Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

Chijioke Isamade (x5216991)

Sacramento Main Jail

651 "I" Street

Sacramento, CA, 95814

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIJIOKE ISAMADE,<br><br>    Petitioner,<br><br>      V.<br><br>JIM COOPER, SHERIFF OF<br>SACRAMENTO COUNTY<br>    Respondent. | Case No:<br><br>MEMORANDUM OF POINTS<br>AND AUTHORITIES IN SUPPORT<br>OF PETITION FOR WRIT OF<br>HABEAS CORPUS (28 U.S.C § 2254) |

## I. PRELIMINARY STATEMENT

Petitioner Chijioke Isamade respectfully challenges his conviction in Sacramento County Superior Court (Case No. 21FE019505) for Carjacking (PC§215) and Assault (PC §245(a)(4)), on the grounds that the judgement is VOID ab initio for lack of fundamental territorial jurisdiction and therefore, this conviction was obtained in violation of the fourteenth Amendments Due Process Clause because the judgement rests upon a fundamentally fraudulent jurisdictional premise.

This petition presents newly discovered evidence specifically, sworn declarations from the alleged victim (Elexis Bernal), conclusively demonstrating that no element of the alleged offense occured within Sacramento county and that the entire incident occured in Lodi, California (San Joaquin County). This fact was concealed from the Petitioner and the trial court by

a falsified police report authored by Detective Celina Fuerte, containing materially false statements regarding the location of the offense and fabricating a Sacramento location to manufacture jurisdiction where none legally existed. The prosecution and the trial court relied on this police report containing materially false statements to establish jurisdiction.

Petitioner asserts that this extrinsic fraud rendered his "No Contest" plea involuntary and the judgement void, because the Sacramento Superior Court lacked the power to hear the case, any resulting conviction violates the Due Process Clause of the Fourteenth Amendment.

## II. TIMELINESS AND EXEMPTIONS TO AEDPA DEADLINE

Petitioner asserts that this petition is timely filed. However, out of an abundance of caution, Petitioner provides the following grounds for statutory tolling and equittable exceptions to the one-year limitation period under the Antiterrorism and Effective Death Penalty Act (AEDPA).

### (A) Delayed Accrual Under 28 U.S.C § 2244(d)(1)(D)

Under § 2244(d)(1)(D), the limitation period does not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence".

Factual Predicate: The factual predicate is the victim's sworn admission that the police report was fraudulent and that the incident occured wholly outside Sacramento County, contrary to fraudulent account of false incident in police report.

Page 2 of 11

**\* Discovery of Fraud:** The actual police report by Detective Celina Fuerte was not available to Petitioner until the discovery phase of a post-conviction motion under [PC§1016.5 evidentiary hearing held in November 25, 2025] as statutory "collateral attack" on other grounds. Also, the evidence including "Sworn Affidavit of alleged victim (post conviction)" and "Transcripts of alleged victim's interview with Licensed Investigator" were discovered after the filing of PC§1016.5 motion and during the discovery phase in 2025.

**\* Diligence:** Petitioner could not have compelled the alleged victim to admit the falsity of the police report earlier. Although it is now known that alleged victim submitted to D.A, a previous sworn Affidavit prior to the plea bargain and conviction, petitioner was admitted to Napa State hospital with serious mental health ailments at the time, whereas prosecuting D.A failed to disclose such exculputory evidence and Petitioner could not have compelled the prosecution to disclose evidence prior to the discovery phase of the post-convictioN collateral attack under PC§1016.5. Petitioner acted diligently by filing a Writ of Error Coram Nobis in state court immediately upon obtaining the evidence. Petitioner relied on "accusatory pleading"/ "felony Complaint" which carries a presumption of regularity. (Exhibit A-D) is a new factual development.

**\*FILING:** As this petition is filed promptly after the California Supreme Courts denial of related Coram Nobis petition on December 17th 2025, it is within one year of the date the factual predicate

was discovered.

(B) The "Actual Innocence" Gateway (Schlup V. Delo)

Even if the Court deems the petition untimely under §2244(d)(1), Petitioner is entitled to an equitable exception under the "Actual Innocence" gateway established in [Schlup V. Delo, 513 U.S. 298 (1995)] and [McQuiggin V. Perkins, 569 U.S. 384 (2013)] - that a credible showing of "actual innocence" serves as a gateway to overcome the expiration of the statute of limitations.

* Standard: A petitioner can bypass the AEDPA time bar if they present "new reliable evidence" showing that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" - [See Schlup V. Delo, 513 U.S 298 (1995)].

* Application: Petitioner is "actually innocent" of the crime as charged in Sacramento County. Venue is a jurisdictional element. The alleged victims declarations state unequivocally: "No Crime whatsoever occured in Sacramento, CA as falsely represented in police report ... all alleged offenses occured somewhere in Lodi, CA (San Joaquin County)". California law (Penal Code §777) mandates that jurisdiction lies in the county where the crime was committed.

* Evidence: [See Exhibit A to D] - If this evidence were presented, no reasonable juror in Sacramento County could legally convict, and the Superior Court would have been compelled to dismiss the case for lack of territorial jurisdiction.

* Result: Because the crime alleged did not occur in the charging

jurisdiction, Petitioner is factually innocent of violating the law within that jurisdiction, rendering the conviction void.

## III STATEMENT OF FACTS AND PROCEDURAL HISTORY.

* The Fraudulent Police Report : On November 21, 2021, Sacramento Police Detective Celina Fuerte (Badge #274) authored an arrest report (Report No. 21-335893). Lodi Police had responded to the incident, conducted investigations and recieved statements. The alleged victim was taken to safety and the scene of crime was concluded independently by Lodi Police in San Joaquin County.

Over 7 hours later, detective Celina Fuerte claimed to have contacted the alleged victim using her personal mobile phone with Body Worn camera activated, and to establish jurisdiction, the report authored by Celina Fuerte falsely stated that Petitioner "forcefully removed [the alleged Victim] from her residence located .... in Sacramento, County of Sacramento." [See Exhibit C]. Nowhere in the report did detective fuerte include the facts that Lodi police had responded collected statements and investigated the crime scene in Lodi, CA. No BWC footage was discovered and no record of said phone call or the resulting victim statement was discovered to support the conditions of such interaction.

* The Plea: Relying on the official "felony complaint" that resulted Petitioner entered a plea of No Contest on February 22, 2023, believing the State could prove the crime occured in Sacramento.

**\*The New Evidence:** In 2025, the alleged victim's two sworn affidavits and declarations under penalty of perjury was discovered by Petitioner, including transcripts of the recorded interview between Licensed Investigator Steven Anderson and alleged victim (Elexis Bernal). She **Attests**:

* "My statements... are both without merit."
* "No part of the alleged offense occured in Sacramento county — "My fiance never pulled my hair and never forced me into the car".
* "We have cohabitated peacefully... and we share our finances and all assets/liabilities including our Sacramento home and our 2 automobile vehicles"
* "He has never had a violent character for once in our 6 years plus partnership".
* "The entire alleged incident... occured in Lodi [San Joaquin County]".

## IV EXHAUSTION OF STATE REMEDIES

Petitioner has exhausted all available state remedies as required by 28 U.S.C § 2254(b)(1):

* Direct Appeal: Completed in Third Appellate District (C098869) on 6/18/2024 and California Supreme Court (S285726) on 8/21/2024 – (Both Denied)
* State Collateral Attack (Coram Nobis): Filed in Third Appellate District (C104904) denied on 10/31/2025 and Petition for Review in California Supreme Court (S293896) denied 12/17/2025. [See Exhibit E to H].

# II GROUNDS FOR RELIEF

## GROUND ONE

Violation of Due Process (Void Judgement)

Violation of Due Process (fourteenth Amendment) -

Prosecutions Use of False Evidence (Napue/Brady Violation).

**※ Federal Basis:** A court judgement entered without subject-matter or territorial jurisdiction is void. [see Ex Parte Siebold, 100 U.S. 371 (1879)].

A conviction obtained through the use of false evidence, known to be false by representatives of the State, violates the fourteenth Amendment. [Napue V. illinois, 360 U.S. 264 (1959)]; [Mooney V. Holohan, 294 U.S. 103 (1935)] - The Sacramento Superior Court asserted jurisdiction solely based on a fraudulent police report claiming the alleged victim was "forcefully removed ... from her residence located in Sacramento".

**※ Argument:** The State, through its agent Detective Celina fuerte, fabricated the location of the crime to manufacture jurisdiction in Sacramento County. Police knowledge is imputed to the prosecution under [kyles V. Whitley, 514 U.S. 419 (1995)]. The police report stated the victim was "forcefully removed from her residence ... in Sacramento". The alleged victim (Elexis Bernal) now swears under penalty of perjury this is false. The manufacturing of venue by Law enforcement constitutes "extrinsic fraud" that deprived Petitioner of a fair proceeding. But for this false evidence, the Sacramento Superior Court would have had no power to hear the case. The victim has now

sworn under penalty of perjury that "Sacramento Police Detective Celina Fuerte's report... is false" and "No part of any criminal contact... occured in Sacramento County". The prosecutor and police detective presented a fabricated narrative to the court to manufacture jurisdiction. The police report falsely alleges a kidnapping starting in Sacramento, which victim unequivocally denies in multiple sworn declarations under penalty of perjury. The fraud prevented petitioner from contesting jurisdiction at the time of his plea because he relied on the official "Felony Complaint". When the "foundational fact" of jurisdiction is proven non-existent, the judgement must be vacated.

## GROUND TWO
Involuntary Plea Induced by Material Misrepresentation.
*Federal Basis: A guilty or no contest plea must be "voluntary" and "intelligent" - [Boykin V. Alabama, 395 U.S. 238 (1969)]. A plea is void if induced by "misrepresentation by State - [Brady V. United States, 397 U.S. 742 (1970)].
* Argument: Petitioners waiver of his rights was not "knowing" or "intelligent" because it was based on a material falsehood presented by the State that the crime occured in Sacramento. A defendant cannot validly waive a jurisdictional defect if the facts establishing that defect were fraudulently concealed from him. Had petitioner known the truth that the incident occured wholly outside the Sacramento county, he would not have pleaded no contest and would have moved

to dismiss for lack of jurisdiction - [Hill V. Lockhart, 474 U.S. 52 (1985)].

## GROUND THREE

Void Judgement for Lack of Fundamental Jurisdiction.
* Federal Basis: While venue is often a matter of state law, the arbitrary deprivation of liberty interest (the right to be tried in proper jurisdiction as defined by state law) through fraud, violates Federal Due Process - [Hicks V. Oklahoma, 447 U.S. 343 (1980)].
* Argument: Under California Penal Code § 777, jurisdiction lies where the crime is committed. The Sacramento Superior Court acted without subject-matter jurisdiction because the "jurisdictional facts" (the location of the crime) were non-existent. A judgement entered by a court without jurisdiction is void ab initio. Because this defect was hidden by State misconduct, Federal Habeas review is necessary to vacate the void judgement.

## GROUND FOUR

Ineffective Assistance of Counsel (IAC)
* Supporting Facts: Court appointed Attorney Brandon McGee and Court appointed Panel Attorney Richard Ilhareguy failed to investigate the venue of the alleged crime or interview the victim regarding the location, relying blindly on the police multiple hearsay statements and Felony complaint resulting from fabricated report.

Page 9 of 11

#**Legal Argument:** Under [Strickland v. Washington, 466 U.S. 668 (1984)], Public Defender Brandon McGee's and panel attorney Richard Ilhareguy's performance as counsel was deficient for failing to verify the fundamental jurisdictional element of the offense. Had either counsel investigated (for 11 months after arraingment), and discovered the incident occured in Lodi, the case in Sacramento would have been dismissed for lack of jurisdiction.

# VI    CONCLUSION

The petitioner is currently held in custody based on a judgement procured by fraud. The police fabricated a crime scene in Sacramento to secure a conviction that legally belonged, if anywhere, in San Joaquin County. This goes to the very power of the court to act. The Brady violation for concealing/failure to disclose exculputory evidence by the prosecution, and Ineffective Assistance of Counsel by the Public Defender Brandon McGee and Court appointed panel attorney Richard Ilharguy, bolster petitioners claim for federal Habeas relief and compound the Constitutional violations upon Petitioner who has been deprived of his liberty since November 22, 2021 till date.

## VII. PRAYER FOR RELIEF

WHEREFORE Petitioner respectfully prays that this Court:

* Exempt this petition from the AEDPA one-year deadline pursuant to §2244(d)(1)(D) and the Actual Innocence Gateway;

* Conduct an Evidentiary hearing to review the newly discovered sworn declarations of Elexis Bernal (victim);

* Appoint counsel for Petitioner if an evidentiary hearing is granted pursuant to Federal Rules of Habeas Corpus rule 8(c);

* Issue a Writ of Habeas Corpus vacating the judgement in Sacramento County Superior Court case No. 21FE019505

* Order the immediate release of petitioner from custody regarding this conviction, or remand for new trial in proper venue.

* Grant such other relief as law and justice require

Respectfully Submitted,

Dated: December 29, 2025

Chijioke Isamade
Petitioner (In Propria Persona)

## VERIFICATION

I, Chijioke Isamade, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: December 29, 2025
At: Sacramento, California

Chijioke Isamade
Petitioner (In Propria Persona)

Page 11 of 11

# Exhibit A

Document 1

My name is Elexis Bernal of 4400 Attawa ave Sacramento CA 95822

Chijioke Isumaele is my Fiance and Life partner since September 2018. We have cohabitated peacefully for 3½ years and we share our Finances and assets including our Sacramento home and 2 vehicles. my kids and I Love him he is a loving parent and respectful partner No marriage is easy. He is my husband and Life partner

Here are my sworn facts

1. My Fiance never pulled my hair and never Forced me into the car.

2. My Fiance never initiated or attempted to initiated or indulge in any sexual acts on our drive From Sacramento To Stockton Butha

3. I was Threatned By my Fiance "energy" But none of his words were unconftional or immediate and I never Believed that he specifically meant To communicate For any clear threats

4. My Fiance never once possessed a Firearm

SEE ATTACHED NOTARIAL ACKNOWLEDGEMENT CERTIFICATE
DATED 05/25/2022

Since his releace in october 2021

I do not intend to futher pursue any criminal charges against Chijioke Isamdde. He has never had a violent character for once in our 3 years plus partnership. he does suffer from mental illness/health and we are pursuing proffessional marriage counselling and help already to Better ourselves. Everybody makes mistakes and nobody is perfect, But we our punishing [pushing] To Learn and move Foward. We as a couple are working on soulutions that prioritize oa staBility and getting Treatment and help instead of cycling Them Through Jail.

Elexis Bernal
4400 Attana ave
Sacramento CA 95822

SEE ATTACHED
NOTARIAL ACKNOWLEDGEMENT
CERTIFICATE
DATED 05|25|2022

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Sacramento _____ )


On __05/25/2022_____ before me, __Jaya Rao, Notary Public_____

(insert name and title of the officer)

personally appeared __Elexis Bernal_____.
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.


WITNESS my hand and official seal.


Signature _____     (Seal)

JAYA RAO
COMM. # 2323827
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO CO.
EXP. MAR 10, 2024

# Exhibit B

Exhibit A

My name is Elexis Bernal of 4400 Attawa ave. Sacramento CA, 95822

My Statements dated November 2021 and december 2021 are Both without merit.

Chijioke Isamade is my Fiancee and Life partner Since September 2018. We have cohabitated peacefully for 3 years; we Share our finances and all assets/LiaBilities Including our Sacramento home and our 2 auto mobile vehicles. My Kids and I adore him, he is a Loving parent, a respectful partner and A peaceful provider.

He is my husband and Life partner Here are my sworn Facts:
1. My Fiancee never pulled my hair and he never forced me into the car.
2. My Fiancee Never initiated or attempted to initiate or indulge in any Sexual acts on our drive To Stockton CA from our resident in Sacramento - Both I was Threatned By my Fiancee "Energy But none of his words were unconditional or immediate and i never Believed that he specifically meant To communicate fear or any clear threats. My Fiancee Never once possessed a Firearm Since his Release in October 2021

2nd page

I do not intend to futher pursue any civil or criminal charges against chijioke Isamade. He has never had a violent character for once in our 6 years plus partnership. He does suffer mental health ailments and we are pursing professional "Marriage Counselling" already to better ourselves. Everyone makes mistakes and nobody is perfect. He is a good educated loving man and a Leader.

Kind Regards,

Elexis Bernal.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Sacramento

On 06-30-2023 before me, G.Gill A Notary public
    (Date)                    (Here Insert Name and Title of the Officer)

personally appeared ELEXIS BERNAL
                            (Name(s) of Signer(s))

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
        (Signature of Notary Public)

G. GILL
Notary Public - California
Sacramento County
Commission # 2415862
My Comm. Expires Sep 15, 2026

# Exhibit C

Packet ID: 274662

Arrest Report Number: 21-335893

# ARREST REPORT-BLACK INK ONLY
## SACRAMENTO COUNTY JAIL

RECORDS 6267

Arresting Type: Fresh
XREF: 5216991

Arresting Agency: SAC PD

Arrestee: ISAMADE, CHIJIOKE

| CHARGE | CNT | MISD | FEL | WRNT | CHARGE | CNT | MISD | FEL | WRNT |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | PC 498D | 1 | | X | |
| PC 289(5)(1) | 1 | | X | | VC 10851(A) | 1 | | X | |
| PC 245(A)(1) | 1 | | X | | | | | | |
| PC 273.5(A) | 1 | | X | | | | | | |
| PC 289(A)(1) | 1 | | X | | | | | | |
| PC 422 | 1 | | X | | | | | | |

BAIL
Registry
Fingerprint
CII
FBI
XREF 5216991

Last Name: ISAMADE

First Name: CHIJIOKE

Middle Name:

Nickname:

City: STOCKTON
State: CA  Zip: 95203

Place of Birth:

All Phone:

DOB: 
Sex: M
Race: B
HGT: 603
WGT: 215
Hair: BLK
Eye: BRO

Home Phone:

Employer:

Employer Phone:

OLN:
State: CA
SSN:

Phone:

Notified: No

NOK/Parent/Guardian:

Address:

Style: 4-Door

Color: Silver

Vehicle License:

Make: Toyota
Model: Camry
Year: 2017

Left at Address:

Other: RECOVERED BY STOCKTON PD

Towed By:

Location of Crime:

Date/Time of Crime: 11/22/2021 00:30

Victim/Complainant Name:

Date/Time Arrested: 11/22/2021 07:42

Date/Time Booked: 11-22-21  1546

Location of Arrest: 310 N El Dorado, Stockton, CA

BAC:

Tested:

Arrestee Sobriety: Sober

| | Assaultive | Combative | Uncooperative | Cooperative | Fingerprint |
|---|---|---|---|---|---|

Accomplice/Crime Partners:

I declare the above named person has been arrested and is detained in the Sacramento County Jail. I am informed of and believe the facts below. which establish probable cause to detain this individual. Evidence establishing a crime was committed and the arrested person committed the crime:

☐ Witness  ☒ Victim  ☐ Officer stated he/she saw/heard the following.

On 11/22/2021 (Monday), sometime between 0030 hours and 0124 hours, S-Chijoke ISAMADE forcefully removed his girlfriend (together for 5 years), from her residence located at in Sacramento, County of Sacramento. S-ISAMADE then forced V- into her silver 2017 Toyota Camry against her will and drove away from the residence with V- . While driving on the freeway at an unknown location (possibly in Lodi, CA), S-ISAMADE forcefully inserted his fingers inside of V- vagina, digitally penetrating her against her will through force and fear. S-ISAMADE also physically battered V- while driving the vehicle by punching her breasts, biting her body, and punched her in the head several times. S-ISAMADE also made specific, credible, and imminent threats against V- life by stating he was going to kill her, chop her up, and do the same to her children. V- believed the threats to be credible and was in fear for her life believing she was going to die. S-ISAMADE also stated he was going to. ******* Probable Cause Continues on Next Page. Exceeded 14 Lines *******

NOV 23 2021

**ARREST REPORT-BLACK INK ONLY**
**SACRAMENTO COUNTY JAIL**

Arresting Agency: SAC PD

Arrestee: ISAMADE, CHIJIOKE

Packet ID: 274662

Arrest Report Number: 21-335893

Arresting Type: Fresh

XREF: 5216991    S-449854

return to V-████ residence at ████████ in Sacramento and kill all of her children.

At one point, S-ISAMADE stopped at a Chevron gas station at an unknown location in Lodi, CA. When they stopped for gas, V-████ was able to exit the vehicle in an attempt to escape. While running away from the vehicle, S-ISAMADE drove towards V-████ and attempted to run her over with the vehicle. V-████ was able to avoid being struck by the vehicle and S-ISAMADE fled from the location without V-████.

V-████ was hospitalized as a result of her injuries sustained from the incident and advised officers S-ISAMADE never had permission to driver her vehicle, which is registered to her.

At about 0742 hours, Stockton Police Department officers located the vehicle at the Chase Bank located at 510 N. El Dorado Street in Stockton, CA along with S-ISAMADE who was with the stolen vehicle.

Stockton Police Officers had to utilize a tazer to subdue S-ISAMADE and take him into custody as he forcefully resisted police officers on scene.

SPD Det. C. Schneider made contact with V-████ and confirmed the S-Isamade's identity by showing her a WebKPF Booking photo from 11-9-21. Det. Schneider observed several bite marks to her chest, arms, and legs sustained from the suspect.

S-ISAMADE was subsequently arrested and booked into the Sacramento County Main Jail for the following charges:

289(A)(1) PC- FELONY PENETRATION BY FOREIGN OBJECT FORCE/FEAR, 273.5(A) PC-FELONY DOMESTIC VIOLENCE WITH INJURIES, 422 PC- FELONY TERRORIST/CRIMINAL THREATS, 209(b) PC- FELONY KIDNAPPING, 245(A)(1) PC- FELONY ASSAULT WITH A DEADLY WEAPON GBI OR DEATH LIKELY, 10851(A) VC- FELONY VEHICLE THEFT, and 496(D)- FELONY POSSESSION OF A STOLEN VEHICLE.

| Arresting Officer Name | Badge | Division | Officer Signature | |
|---|---|---|---|---|
| C. FUERTE | 271 | | | |
| Judges Signature | | ☐ Declaration DOES establish probable cause to believe the arrested person committed a crime. | | |
| | | ☐ Declaration DOES NOT establish probable cause to believe this arrested person committed a crime | | |

7400-159 rev 4/11

Page 2 of 2

Booking Copy

# Exhibit D

IN RE: )
)
PEOPLE )    CASE NO.:    21FE019505
)
    vs. )
)
CHIJIOKE ISAMADE )
)
_____ )

**ELEXIS BERNAL 1-24-2023 TELEPHONE INTERVIEW BY STEVEN ANDERSON**
**(V to Inv on 1-24-2023 (2nd interview))**
* * *
Transcribed by: Lisa A. Ward
Date Transcribed: March 3, 2023

Anderson:    All right, so I am on the phone with Elexis
Bernal, is that how you pronounce your last name?

Bernal:    Yes.

Anderson:    Okay. And I called you at oh gosh, ███████,
is that right?

Bernal:    Yes.

Anderson:    Okay. And you and I spoke earlier today.

Bernal:    Right.

Anderson:    About the um, incident between yourself, again
one more time, pronounce his first name for me.

Bernal:    Uh, Chijioke.

Anderson:    Chijioke, okay. Um, we spoke earlier, you gave me
some background um, regarding your dating
relationship. Um, I'd like to go over the police
report with you. Um, and what I'll do is, I'll
stop every um couple paragraphs or so and ask you

- 1 -

if there's anything that you'd like to correct. Okay?

Bernal: Okay.

Anderson: Okay. So this is um, the first is for the Sacramento Police Department. And it was written by it looks uh Officer or Detective Celina Fuerte. And so the first couple paragraphs say, On 11/22 of '21 at approximately 0228 hours I, Officer Fuerte, made contact with the victim, Elexis Bernal via telephone and obtained her statement. My body worn camera was activated and recording. Victim Bernal stated the following in summary. Everything started in the hallway. He tried to grab the keys to my vehicle and I tried to ask him not to leave with my car. I tried to grab the keys from him, that's when we went outside and he tried to drag me into the car. He dragged me to the car by my hair, then bit me, then pushed me. He bit me everywhere. He said I was going to die. He was going to chop me up and take me to Nevada. He said we'll go towards Reno so no one could touch us since it's Nevada County. Is any of that uh, anything you would - - you would say is different than what actually happened?

Bernal: Um, yeah, uh, like I explained earlier um, we

- 2 -

were cleaning, um, we had disagreements. Um, that um, he tried to leave so I ran after him, um we were in the middle of clean and not fully dressed. So um, because of things - - because of my past um, just uh, I just kind of ran out there and tried to stop him.

Anderson: Okay.

Bernal: Um, by my free will went (inaudible).

Anderson: Okay, no problem. And um - -

Bernal: (Inaudible) disagree with that part.

Anderson: Okay. When you and I spoke earlier, which was also record, um, as well as this phone call, that um, you had some issues with him saying that he was going to go to Stockton and there was some issues with him and another woman that you were nervous about?

Bernal: Correct.

Anderson: Okay.

Bernal: And that's why I had fear of him, you know, leaving.

Anderson: Okay. All right, so I'm going to read the next um, two, three paragraphs. He dragged me to the car by my hair, then bit me, then pushed me and he bit me everywhere. Oh, we already read that part, I apologize. He talked about raping, killing me, killing my daughters, take videos,

- 3 -

hurting them. We've been together for a few years. Currently right now - - right now he has an ankle monitor for ICE. The reason why we're up packing stuff was because he - - we were going tomorrow to Los Angeles for him to turn himself into the US Marshals. He has until tomorrow, which is 11/23 of '21 to turn himself in. I think he was upset about having to go back to federal prison. The kids aren't biologically his. They were not here when this happened. They were already at my mom's house. It's just the stuff he was saying he was going to do. Is any of that uh - -

Bernal:   So yeah, so I think they're like getting mixed up a bunch of things. I feel like they are just taking bits and pieces of each people's statements. Because I honestly don't remember talking. I remember that phone call blurred. I remember sitting in the hospital. I remember somebody giving me their cell phone to speak to somebody.

Anderson:   Uh-huh.

Bernal:   Who said they were Sacramento PD. I don't know, it was a blur. I just remember them asking if they had permission to enter my house. I told them no.

- 4 -

Anderson:       Okay.

Bernal:         They begged me. I told them no. They said that's the only way because the doors are open because (inaudible) struggle. Again, I said no. Um, I - - they did state my mom was there and I said I would feel more comfortable, not that I'm not trying to not cooperate. I don't want (inaudible) help. It's just, I didn't want anyone entering in the house. Um, but I told them you're more than welcome to take the statement over the phone. Um, my mom, they told me my mom (inaudible) my house. I asked about - - I asked about my cell phone. Um, and that was all (inaudible) I don't really remember - - I don't really remember making a statement.

Anderson:       Okay. Did he - - did he say those things about raping, killing your - - killing you, killing your daughters? Did he say any of that stuff?

Bernal:         Well, no. No, we were just - - no, we were just having disagreements about everything (inaudible).

Anderson:       Speaking of your house. Um, do you have a surveillance system?

Bernal:         Um, I do. Um, but I don't have the clips for that day. I guess like they have like storage where you're supposed to save them. Um, yeah that was

- 5 -

bad (inaudible).

Anderson: Did you tell the police that you had a surveillance system?

Bernal: Uh, yes, they know they can see when - - they mentioned it to me, they can see when they walked up 'cause they seen the lights (inaudible).

Anderson: Okay. All right. Excuse me, a little bit of a cough there.

Bernal: Okay, no problem.

Anderson: All right, so let me uh keep reading. He was driving crazy, swerving into cars, saying he was trying to kill us. He started talking about trafficking and what he would do to me and my daughters and this country. He kept hitting the top of my spine and he told me all he had to do was snap it and that that would be it. He said he'd chop me and my kids up and if I contact the police this time and tell on him he will know. He'll go over to my family's house and first do it to my daughters to make me suffer, and rape my 14 year old. Is any of that uh, is there anything different than what actually happened? Is that accurate?

Bernal: No, it's not accurate. Like I stated already in the beginning when I first met you in person, kind of what happened, I feel that's really what

- 6 -

happened.

Anderson: Okay, um, I'm going to keep going with some of the more very specific stuff, and I apologize I know this is um, might be a bit repetitive.

Bernal: Yeah.

Anderson: Um, the sex assault happened when we were on the freeway. We were going to Stockton to grab the rest of his stuff. I kept begging him, but then I got quiet because I seen the screaming was making him mad and antagonizing him. That's when he started socking me in my head multiple times telling me it was punishment. He rolled down all the window - - windows, as I'm naked and he told me to suffer and get cold. He told me he'd make me pee and shit on myself and I'd suffer. He said he would cut off his ankle bracelet, take me to Mexico, sell me, rape and then stick an iron in me so no one would ever touch me again.

Bernal: Yeah, I never said that. I read that part. I never said that.

Anderson: Okay.

Bernal: I know that for a fact. I know that was never ever, ever said. So don't - - but an iron. Yeah, I don't - - I don't know what - - where they (inaudible) I feel like, I feel like somebody was taking bits and pieces of certain things.

- 7 -

Anderson:    Okay.

Bernal:    Or other people, or (inaudible) didn't remember. I don't know what they did.

Anderson:    Okay.

Bernal:    I'm so confused. I like, yeah (inaudible) was confused.

Anderson:    No problem. Uh, I'm going to continue a couple more paragraphs that I know are probably hard to hear. Um, it's pretty graphic stuff. Uh, he was sticking his fingers in my vagina. He kept hitting me and saying those things to me and I was crying. I had no bottoms. I had no clothes on. He hit my breasts a few times. Hit my arm. Hit my head and legs. I believe I was in Lodi when this happened. Right after he tried to hit a car, we got off an exit and I see a Chevron. He was attacking me in the parking lot of the Chevron. Is any of that uh, is all that accurate?

Bernal:    Um, I'm sorry, can you repeat that one more time?

Anderson:    Uh, the whole thing or just, you want the last paragraph or the - -

Bernal:    The last paragraph, yes.

Anderson:    Right after he tried to hit a car we got off on an exit and I see a Chevron. He was attacking me in the parking lot of the Chevron.

Bernal:    Um, that's just when we have a disagreement, and

- 8 -

um, we kind of separated.

Anderson: Okay. What about uh the issue of him digitally penetrating your vagina with his fingers?

Bernal: Oh okay, I'm sorry I forgot all about that paragraph. Um, no so he's never um, touched me. He never sexually touched me. He's never been weird with my kids. Anybody's kids. Um, he, he's actually pretty good. Um, he's been around my daughters for - - since they were younger.

Anderson: Okay.

Bernal: And for him having like his own children um, I believe he's very good. Um, so I don't have any doubts with that. Um, but and I feel like my daughters or like - - are like his um, whether it's biologically or not. I remember, I know that bothered him because - - and I remember never stating it the way that they wrote in the um, statement. I remember them asking me do you guys have children together, and I said yeah. They said how many. I said two. They said, are they biologically his? And I said well does it really matter, and um, he said yes this is for the facts. And I said well, not by blood but they are. Um, and I remember them, I remember reading that little piece and I'm like okay the way that they did it wasn't - - so just from reading that

- 9 -

everyone kind of worded what they wanted to word and how they wanted to word it and everybody put everything together. But um, he never sexually assaulted me or my kids or anybody.

Anderson: Okay.

Bernal: Um, so it's never happened.

Anderson: All right, and I've got just one last part here on this initial report. When he wasn't looking I tried to take the keys out of the ignition. That's when he broke my nail and started hitting me, elbowing me, biting me, grabbing me, hitting me in my back. I got out of the car and he tried to run me over. I ran in the bushes and he took off. He never had permission to drive my vehicle or take my vehicle. I want to press charges.

Bernal: Mm-hm. Um, so uh, again um, I guess kind of what we talked about earlier just the leading. Um, and like I mentioned earlier we just had the disagreements, and um, I did try to get out the car or exit, or I did try to grab something um, but we did have a disagreement. Um, and I got out the car.

Anderson: Okay, and were you assaulted at all?

Bernal: Uh, no I wasn't assaulted but we just had - - we just had disagreements.

Anderson: Okay.

- 10 -

Bernal:    We weren't on the same page.

Anderson:  Earlier you had told me that um you guys typically share belongings including your car. Is that accurate?

Bernal:    Yeah, that's accurate.

Anderson:  Okay. All right um, think uh, did you have any conversations or did you complain to the district attorney about him contacting you from the jail?

Bernal:    Um, I did.

Anderson:  Okay. Um, why did you complain about him contacting you from the jail?

Bernal:    Um, because I think I was really frustrated um, I wanted just time to myself um, to understand just where - - where everything was. Um, and I was just getting calls and just, weird calls, and peop- - - and calls from Sharral, but the way that they were - - the way I felt like the intimidation was was um, I had a false criminal report. I had false criminal report, a couple false criminal reports filed against me, filed against my kids after what happened. Um, I had to go through multiple investigations. I had to cooperate with Stockton, Lodi, different counties that they were making up things, um, Sharral was. So as I would get the complaints and the restraining orders and her name would be at the

- 11 -

bottom.

Anderson:    Okay.

Bernal:    Um, so I just felt like I was at the time being harassed. Um, I felt like whatever was going on, I felt like it was them and I just wanted to be kinda left alone if we weren't on the same page or if we were departing. Or whatever. Again, I don't know 'cause I didn't talk to him 'so I don't know where we sit. But um, I just didn't like all these extra things as I'm trying to process things.

Anderson:    Okay.

Bernal:    Um, (inaudible) go to them and I gave it to them because I wanted them to know what was going on and I just kinda wanted to be left alone to be by myself.

Anderson:    Okay. Um, earlier we talked a little bit about the surveillance system at your house.

Bernal:    Oh, I'm sorry one more thing.

Anderson:    Yeah?

Bernal:    I just wanted to respond.

Anderson:    Yeah.

Bernal:    Directly to these allegations that are not true because I don't have any, you know, I want to make sure I keep my name - - I don't wanna have something on me that I'm not actually doing.

- 12 -

Anderson:    Okay.

Bernal:      I had to respond and the only way to respond is to, you know, you have to respond legally.

Anderson:    Um, you know you have to respond honestly, um, that's the most important thing.

Bernal:      Honest - - honestly and legally.

Anderson:    Yeah.

Bernal:      And you know I mean it's not like a bad way or taking it into my hands I just responded, you know, the way that I was given, but yeah honestly.

Anderson:    Okay. Um, earlier we talked a little bit about the surveillance system at your home. Um, and you said the police asked you about it. Did you offer um, the police to take a look at that surveillance system or offer to make them a copy at the time of what had happened?

Bernal:      Okay, I don't know, at the time - - I don't know if it was recording or not or um, I remember them asking me about it but I don't remember. I think they were kind of focused on other things.

Anderson:    Okay. Was it maybe uh, did you maybe prefer them not to have just based on what was being said at the time was maybe different than what actually had happened?

Bernal:      Um, that - - yeah that - - yeah that could be uh

- 13 -

definitely the case. Um, yeah.

Anderson: Okay. All right. Um, Elexis, thank you very much for agreeing to this recorded interview um, on the phone. And uh, I wanted to make sure that I had gone over the report with you.

Bernal: Okay.

Anderson: Um, I uh, I will contact you again if I have any more questions. Um, but thank you for your time, and uh, you have a good evening okay.

Bernal: Okay, thank you so much. You too Mr. Anderson.

Anderson: All right, take care.

Bernal: Okay, thanks. Bye-bye.

Anderson: Bye-bye.

- 14 -

Isamade, Chijioke/21FE019505

Bernal, Elexis 1-24-23 Phone Interview
(V to Inv on 1-24-2023 (2nd interview))

CERTIFICATION OF TRANSCRIBER

I, LISA A. WARD, do hereby certify that the foregoing transcript of the **ELEXIS BERNAL 1-24-2023 TELEPHONE INTERVIEW BY STEVEN ANDERSON (V to Inv on 1-24-2023 (2nd interview))** audio and/or video file is true and accurate to the best of my knowledge and ability.

Executed on March 3, 2023, at Loomis, California.


_/s/ Lisa A. Ward_
LISA A. WARD

Isamade, Chijioke/21FE019505                    Bernal, Elexis 1-24-23 Phone Interview
                                                (V to Inv on 1-24-2023 (2nd interview))

# Exhibit E

Court of Appeal, Third Appellate District
Coreene Daggan, Clerk
Electronically FILED on 6/18/2024 by A. Oania, Deputy Clerk

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHIJIOKE ISAMADE,<br><br>Defendant and Appellant. | C098869<br><br>(Super. Ct. Nos. 18FE018008, 21FE019505, 21FE019949) |

Defendant Chijioke Isamade entered into a global plea arrangement that resolved criminal charges in three separate cases. On appeal, he contends the trial court erred by not dismissing one of the cases under Penal Code section 1381.5,[1] a statute that protects the speedy trial rights of individuals who are incarcerated in federal prison while state criminal charges are pending against them. Finding no prejudicial error, we will affirm the judgment.

BACKGROUND

In September 2018, the California Highway Patrol issued defendant a ticket that alleged driving under the influence (Veh. Code, § 23152, subd. (a)), concealing a firearm

---

[1] Undesignated statutory references are to the Penal Code.

1

unlawfully causing penetration of the genital opening of the victim (§ 289, subd. (a)(1)), willfully threatening to commit a crime that would result in death or great bodily injury (§ 422), willfully inflicting corporal injury resulting in a traumatic condition (§ 273.5, subd. (a)), carjacking (§ 215, subd. (a)), and driving and taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)).  In December 2021, in case No. 21FE019949, the People charged defendant with obstructing or resisting an executive officer (§ 69).

In February 2023, the parties entered into a global plea to resolve the charges in all three cases.  Under the plea arrangement, defendant pleaded no contest to possession of a controlled substance while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)) in case No. 18FE018008; carjacking (§ 215, subd. (a)) and assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)) in case No. 21FE019505; and resisting an executive officer (§ 69) in case No. 21FE019949.  The trial court imposed an aggregate sentence of five years eight months, consisting of one year for possession of a controlled substance while armed, three years for carjacking, one year for assault, and eight months for resisting an executive officer.

In June 2023, defendant requested permission to file a notice of appeal under the constructive filing doctrine and to have that notice deemed timely.  We granted the request.  The trial court subsequently granted a certificate of probable cause for defendant's postplea appeal.

DISCUSSION

A

Both the state and federal Constitutions guarantee criminal defendants the right to a speedy trial.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 13; see generally *Barker v. Mun. Ct. of Salinas Jud. Dist. of Monterey County* (1966) 64 Cal.2d 806, 810.)  The California Legislature has adopted a suite of statutes declaratory of that right.  (*Barker,* at p. 810.)  One such statute, section 1381.5, provides that individuals convicted of a crime

3

In addition, it is unclear from the limited record before us whether or how defendant pursued a motion to dismiss under the statute or if the trial court ever ruled on such a motion.

We need not address any of these issues.  Even if defendant complied with section 1381.5 and the prosecution did not, defendant has not demonstrated that he suffered prejudice as a result.  Defendant's sole argument on appeal is that prejudice is presumed.  But that principle applies only to statutory speedy trial violations that occur before trial.  (*People v. Martinez* (2000) 22 Cal.4th 750, 769.)  After conviction, a defendant must affirmatively demonstrate prejudice to obtain relief.  (*Ibid.*; *People v. Rogers* (1988) 201 Cal.App.3d 286, 291-292.)  Defendant makes no attempt to establish prejudice, even in response to the People's argument that he failed to make the necessary showing.  We do not discern any prejudice on this record.

DISPOSITION

The judgment is affirmed.

MAURO, Acting P. J.

We concur:

DUARTE, J.

WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

5

# Exhibit F

SUPREME COURT
F I L E D

AUG 2 1 2024

Jorge Navarrete Clerk

Deputy

Court of Appeal, Third Appellate District - No. C098869

S285726

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

THE PEOPLE, Plaintiff and Respondent,

v.

CHIJIOKE ISAMADE, Defendant and Appellant.

---

The petition for review is denied.

GUERRERO
_____
*Chief Justice*

46

# Exhibit G

Court of Appeal, Third Appellate District
Colette M. Bruggman, Clerk
Electronically FILED on 10/31/2025 by D. Welton, Deputy Clerk

IN THE

# Court of Appeal of the State of California
## IN AND FOR THE
## THIRD APPELLATE DISTRICT

THE PEOPLE,
    Defendant and Respondent,
    v.
CHIJIOKE ISAMADE,
    Plaintiff and Appellant.

                        C104904
                        Sacramento County
                        No. 21FE019505

BY THE COURT:

    The petition for writ of error coram nobis is denied.

DUARTE, Acting P.J.

------------------------------

cc: See Mailing List

# Exhibit H

SUPREME COURT
FILED

Court of Appeal, Third Appellate District - No. C104904    DEC 1 7 2025

S293896    Jorge Navarrete Clerk

# IN THE SUPREME COURT OF CALIFORNIA Deputy

## En Banc

---

THE PEOPLE, Plaintiff and Respondent,

v.

CHIJIOKE ISAMADE, Defendant and Appellant.

---

The petition for review is denied.

GUERRERO
*Chief Justice*

# Exhibit I

# FELONY ABSTRACT OF JUDGMENT—DETERMINATE
### (NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED)

**CR-290**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF:
**SACRAMENTO**

PEOPLE OF THE STATE OF CALIFORNIA vs.
**DOB: 06/28/1990**

DEFENDANT:
**CHIJOKE ISAMADE**

AKA:

CII NO.: **A36006395**

BOOKING NO.: **XREF- 5216991**  ☐ NOT PRESENT

| Case No. | |
|---|---|
| 21FE019505 | -A |
| 18FE018008 | -B |
| 21FE019949 | -C |
| | -D |

**FILED ENDORSED**

FEB 24 2023

SACRAMENTO SUPERIOR COURT
BY: _____

FELONY ABSTRACT OF JUDGMENT
☑ PRISON COMMITMENT  ☐ COUNTY JAIL COMMITMENT  ☐ AMENDED ABSTRACT

| DATE OF HEARING | DEPT. NO. | JUDGE | |
|---|---|---|---|
| 02/22/2023 | - 60 | STOUT | ☑ IMMEDIATE SENTENCING |

| CLERK | REPORTER | PROBATION NO. OR PROBATION OFFICER | |
|---|---|---|---|
| E.CHANG | H.PIERCE | WAIVED | |

| COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | |
|---|---|---|
| E.BLAKE, ADA | C.TEMPLETON, RET | ☑ APPOINTED |

1. Defendant was convicted of the commission of the following felonies:

☐ Additional counts are listed on attachment _____ (number of pages attached)

| COUNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YR.) | CONVICTED BY JURY | CONVICTED BY COURT | CONVICTED BY PLEA | TERM (L, M, U) | CONCURRENT | 1/3 CONSECUTIVE | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE (REFER TO Item 5) | 654 STAY | SERIOUS FELONY | VIOLENT FELONY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5A | PC | 215(A) | CARJACKING | 2021 | 02/22/23 | | | X | L | | | | | | X | | 3 | 0 |
| 4A | PC | 245(A)(4) | Assault by means of force likely to produce GBI | 2021 | 02/22/23 | | | X | M | | X | | | | | | 1 | 0 |
| 1B | HS | 11370.1(A) | Unlawful possession ctrld substance & loaded firearm | 2018 | 02/22/23 | | | X | M | | X | | | | | | 1 | 0 |
| 1C | PC | 69 | Resisting executive officers | 2021 | 02/22/23 | | | X | M | | X | | | | | | | 8 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| COUNT | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

3. ENHANCEMENTS charged and found to be true for PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

4. Defendant sentenced ☐ to county jail per 1170(h)(1) or (2)
☑ to prison per 1170(a), 1170.1(a) or 1170(h)(5) due to ☑ current or prior serious or violent felony ☐ PC 290 or ☐ PC 186.11 enhancement
☐ per PC 667(b)-(i) or PC 1170.12 (strike prior)
☐ per PC 1170(a)(3). Preconfinement credits equal or exceed time imposed. ☐ Defendant ordered to report to local parole or probation office.

5. INCOMPLETE SENTENCE(S) CONSECUTIVE

| COUNTY | CASE NUMBER |
|---|---|
| | |
| | |

6. ☐ TOTAL TIME ON ATTACHED PAGES: _____

7. ☐ Additional indeterminate term (see CR-292).

8. TOTAL TIME: **5** | **8**

Attachments may be used but must be referred to in this document.

Page 1 of 2

Penal Code:
§ 1213, 1213.5

Form Adopted for Mandatory Use
Judicial Council of California
CR-290 [Rev. July 1, 2012]

**FELONY ABSTRACT OF JUDGMENT—DETERMINATE**

**CR-290**

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: CHIJOKE ISAMADE

| 21FE019505 | -A | 18FE018008 | -B | 21FE019949 | -C | | -D |

**9. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):**

**a. Restitution Fines:**

Case A: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case B: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case C: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case D: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

**b. Restitution per PC 1202.4(f):**

Case A: $_____  [✓] Amount to be determined  to  [✓] victim(s)*  [ ] Restitution Fund
Case B: $_____  [ ] Amount to be determined  to  [ ] victim(s)*  [ ] Restitution Fund
Case C: $_____  [✓] Amount to be determined  to  [✓] victim(s)*  [ ] Restitution Fund
Case D: $_____  [ ] Amount to be determined  to  [ ] victim(s)*  [ ] Restitution Fund

[✓] *Victim name(s), if known, and amount breakdown in item 13, below.  [ ] *Victim name(s) in probation officer's report.

**c. Fines:**

Case A: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days [ ] county jail [ ] prison in lieu of fine [ ] concurrent [ ] consecutive
[ ] includes: [ ] $____ Lab Fee per HS 11372.5(a) [ ] $____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case B: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days [ ] county jail [ ] prison in lieu of fine [ ] concurrent [ ] consecutive
[ ] includes: [ ] $____ Lab Fee per HS 11372.5(a) [ ] $____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case C: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days [ ] county jail [ ] prison in lieu of fine [ ] concurrent [ ] consecutive
[ ] includes: [ ] $____ Lab Fee per HS 11372.5(a) [ ] $____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case D: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days [ ] county jail [ ] prison in lieu of fine [ ] concurrent [ ] consecutive
[ ] includes: [ ] $____ Lab Fee per HS 11372.5(a) [ ] $____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

**d.** Court Operations Assessment: $____ per PC 1465.8.  **e.** Conviction Assessment: $____ per GC 70373.  **f.** Other: $____ per (specify): _____

**10. TESTING:** [ ] Compliance with PC 296 verified  [ ] AIDS per PC 1202.1  [✓] other (specify): SSD PURS TO 296 PC

**11. REGISTRATION REQUIREMENT:** [ ] per (specify code section): _____

**12.** [ ] MANDATORY SUPERVISION. Execution of a portion of the defendant's sentence is suspended and deemed a period of mandatory supervision under Penal Code section 1170(h)(5)(B) as follows (specify total sentence, portion suspended, and amount to be served forthwith):

Total: [ ]  Suspended: [ ]  Served forthwith: [ ]

**13. Other orders (specify):**

VICTIMS: ELEXIS DOE CPO EXPIRES 02/23/2027;
SAC CO SHERIFFS DEPUTY MURPHY + DEPUTY FRIEDRICHS

**14. IMMEDIATE SENTENCING:** [✓] Probation to prepare and submit a post-sentence report to CDCR per 1203c.
Defendant's race/national origin: BLACK _____

**15. EXECUTION OF SENTENCING IMPOSED**

a. [✓] at initial sentencing hearing
b. [ ] at resentencing per decision on appeal
c. [ ] after revocation of probation
d. [ ] at resentencing per recall of commitment (PC 1170(d).)
e. [ ] other (specify):

**16. CREDIT FOR TIME SERVED**

| CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|------|---------------|--------|---------------|---|
| A | 925 | 463 | 462 | [ ] 2933 [ ] 2933.1 [✓] 4019 |
| B | 0 | 0 | 0 | [ ] 2933 [ ] 2933.1 [ ] 4019 |
| C | 0 | 0 | 0 | [ ] 2933 [ ] 2933.1 [ ] 4019 |
| D | | | | [ ] 2933 [ ] 2933.1 [ ] 4019 |

| Date Sentence Pronounced | Time Served in State Institution |
|---|---|
| 02  22  2023 | DMH [ ]  CDC [ ]  CRC [ ] |

**17.** The defendant is remanded to the custody of the sheriff [✓] forthwith [ ] after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to [✓] the reception center designated by the director of the California Department of Corrections and Rehabilitation
[ ] county jail  [ ] other (specify):

**CLERK OF THE COURT**

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

DEPUTY'S SIGNATURE _____    DATE 2-24-23

CR-290 [Rev. July 1, 2012]    **FELONY ABSTRACT OF JUDGMENT—DETERMINATE**    Page 2 of

**FELONY ABSTRACT OF JUDGMENT—DETERMINATE**
**(NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED)**

CR-290

SUPERIOR COURT OF CALIFORNIA, COUNTY OF:
**SACRAMENTO**

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT:
**CHIJOKE ISAMADE**

DOB: 06/28/1990

AKA:

CII NO.: A36006395

BOOKING NO.: XREF- 5216991

☐ NOT PRESENT

| | |
|---|---|
| 21FE019505 | -A |
| 18FE018008 | -B |
| 21FE019949 | -C |
| | -D |

FILED ENDORSED

FEB 24 2023

SACRAMENTO SUPERIOR COURT

BY _____

FELONY ABSTRACT OF JUDGMENT
☑ PRISON COMMITMENT   ☐ COUNTY JAIL COMMITMENT
☑ AMENDED ABSTRACT

DATE OF HEARING: 02/22/2023
DEPT. NO.: 60
JUDGE: STOUT

CLERK: E.CHANG
REPORTER: H.PIERCE
PROBATION NO. OR PROBATION OFFICER: WAIVED
☑ IMMEDIATE SENTENCING

COUNSEL FOR PEOPLE: E.BLAKE, ADA
COUNSEL FOR DEFENDANT: C.TEMPLETON, RET
☑ APPOINTED

1. Defendant was convicted of the commission of the following felonies:

☐ Additional counts are listed on attachment _____ (number of pages attached)

| COUNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YR.) | JURY | COURT | PLEA | TERM (L, M, U) | CONCURRENT | 1/3 CONSECUTIVE | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE (REFER TO Item 5) | 654 STAY | SERIOUS FELONY | VIOLENT FELONY | PRINCIPAL OR CONSECUTIVE TIME IMPOSED YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5A | PC | 215(A) | CARJACKING | 2021 | 02/22/23 | | | X | L | | | | | | X | | 3 | 0 |
| 4A | PC | 245(A)(4) | Assault by means of force likely to produce GBI | 2021 | 02/22/23 | | | X | M | | X | | | | | | 1 | 0 |
| 1B | HS | 11370.1(A) | Unlawful possession ctrld substance & loaded firearm | 2018 | 02/22/23 | | | X | M | | X | | | | | | 1 | 0 |
| 1C | PC | 69 | Resisting executive officers | 2021 | 02/22/23 | | | X | M | | X | | | | | | | 8 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| COUNT | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

3. ENHANCEMENTS charged and found to be true for PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

4. Defendant sentenced:   ☐ to county jail per 1170(h)(1) or (2)
☑ to prison per 1170(a), 1170.1(a) or 1170(h)(5) due to ☑ current or prior serious or violent felony   ☐ PC 290 or   ☐ PC 186.11 enhancement
☐ per PC 667(b)-(i) or PC 1170.12 (strike prior)
☐ per PC 1170(a)(3). Preconfinement credits equal or exceed time imposed.   ☐ Defendant ordered to report to local parole or probation office.

5. INCOMPLETE SENTENCE(S) CONSECUTIVE

| COUNTY | CASE NUMBER |
|---|---|
| | |
| | |
| | |

6. ☐ TOTAL TIME ON ATTACHED PAGES:

7. ☐ Additional indeterminate term (see CR-292).

8. TOTAL TIME: 5 | 8

Attachments may be used but must be referred to in this document.

Page 1 of 2
Penal Code, §§ 1213, 1213.5

Form Adopted for Mandatory Use
Judicial Council of California
CR-290 [Rev. July 1, 2012]

**FELONY ABSTRACT OF JUDGMENT—DETERMINATE**

CR-290

PEOPLE OF THE STATE OF CALIFORNIA vs
DEFENDANT: CHIJOKE ISAMADE

| 21FE019505 | -A | 18FE018008 | -B | 21FE019949 | -C | | -D |

**9. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):**

**a. Restitution Fines:**

Case A: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment). $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case B: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case C: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

Case D: $_____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment); $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.

**b. Restitution per PC 1202.4(f):**

Case A: $_____ ☑ Amount to be determined to ☑ victim(s)* ☐ Restitution Fund
Case B: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund
Case C: $_____ ☑ Amount to be determined to ☑ victim(s)* ☐ Restitution Fund
Case D: $_____ ☐ Amount to be determined to ☐ victim(s)* ☐ Restitution Fund

☑ *Victim name(s), if known, and amount breakdown in item 13, below. ☐ *Victim name(s) in probation officer's report.

**c. Fines:**

Case A: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ Includes: ☐ $_____ Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case B: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ Includes: ☐ $_____ Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case C: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ Includes: ☐ $_____ Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case D: $_____ per PC 1202.5 $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ Includes: ☐ $_____ Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

**d. Court Operations Assessment:** $_____ per PC 1465.8 **e. Conviction Assessment:** $_____ per GC 70373 **f. Other:** $_____ per (specify): _____

**10. TESTING:** ☐ Compliance with PC 296 verified ☐ AIDS per PC 1202.1 ☑ other (specify): SSD PURS TO 296 PC

**11. REGISTRATION REQUIREMENT:** ☐ per (specify code section) _____

**12.** ☐ **MANDATORY SUPERVISION:** Execution of a portion of the defendant's sentence is suspended and deemed a period of mandatory supervision under Penal Code section 1170(h)(5)(B) as follows (specify total sentence, portion suspended, and amount to be served forthwith):
Total [_____] Suspended [_____] Served forthwith [_____]

**13. Other orders (specify):**

VICTIMS: ELEXIS DOE CPO EXPIRES 02/23/2027.
SAC CO SHERIFFS DEPUTY MURPHY - DEPUTY FRIEDRICHS

**16. CREDIT FOR TIME SERVED**

| CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|------|---------------|--------|---------------|---|
| A | 925 | 463 | 462 | 2933<br>2933.1<br>4019 |
| B | 0 | 0 | 0 | 2933<br>2933.1<br>4019 |
| C | 0 | 0 | 0 | 2933<br>2933.1<br>4019 |
| D | | | | 2933<br>2933.1<br>4019 |

**14. IMMEDIATE SENTENCING** ☑ Probation to prepare and submit a post-sentence report to CDCR per 1203c
Defendant's race/national origin: BLACK

**15. EXECUTION OF SENTENCING IMPOSED**
a. ☑ at initial sentencing hearing
b. ☐ at resentencing per decision on appeal
c. ☐ after revocation of probation
d. ☐ at resentencing per recall of commitment (PC 1170(d).)
e. ☐ other (specify):

| Date Sentence Pronounced | | | Time Served in State Institution | | |
|---|---|---|---|---|---|
| 02 | 22 | 2023 | DMH | CDC | CRC |
| | | | | | |

**17.** The defendant is remanded to the custody of the sheriff ☑ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to ☑ the reception center designated by the director of the California Department of Corrections and Rehabilitation
☐ county jail ☐ other (specify):

**CLERK OF THE COURT**

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

DEPUTY'S SIGNATURE _____ DATE 2-24-23

CR-290 [Rev. July 1 2012] **FELONY ABSTRACT OF JUDGMENT—DETERMINATE** Page 3 of _